# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.K.G., a minor,<br><br>                                        Plaintiff,<br><br>        vs.<br><br>COUNTY OF SAN DIEGO, a public entity;<br>SAN DIEGO COUNTY SHERIFF DEPUTY<br>THOMAS SEIVER; SAN DIEGO COUNTY<br>SHERIFF DEPUTY DETECTIVE<br>BARBARA CROZIER; SAN DIEGO<br>COUNTY SHERIFF DEPUTY JASON<br>WARD; SAN DIEGO COUNTY SHERIFF<br>DEPUTY PAUL MEHAFFIE III; SAN<br>DIEGO COUNTY SHERIFF SEARGANT<br>GEORGE CALDERON, and DOES 1<br>through 50, inclusive,<br><br>                                        Defendants. | CASE NO. 11CV305 JLS (RBB)<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS**<br><br>(ECF No. 9) |

Presently before the Court is Defendants County of San Diego, San Diego County Sheriff Deputy Thomas Seiver ("Deputy Seiver"), San Diego County Sheriff Deputy Detective Barbara Crozier ("Detective Crozier"), San Diego County Sheriff Deputy Jason Ward ("Deputy Ward"), San Diego County Sheriff Deputy Paul Mehaffie III ("Deputy Mehaffie III"), and San Diego County Sheriff Seargant George Calderon's ("Seargant Calderon," and collectively, "Defendants") motion to dismiss.  (Mot. to Dismiss, ECF No. 9)  Also before the Court is minor Plaintiff J.K.G.'s response in opposition, (Resp. in Opp'n, ECF No. 12), and Defendants' reply in support, (Reply in Supp., ECF No. 14).  Having considered the parties' arguments and the law, the Court concludes that Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

**1. Factual Background**

This action is brought based on events that occurred on the evening of December 29, 2009, in Ramona, San Diego, California.  (Compl. ¶ 16, ECF No. 1)  That night, at approximately 8:00p.m., fourteen-year-old Plaintiff J.K.G. visited a friend who was working at Jack in the Box.  (*Id.*)  While waiting for his mother to pick him up, Plaintiff rode around the area on his skateboard.  (*Id.*)

At 8:11p.m., Deputy Seiver—who was already in the area—was approached by an employee of a restaurant neighboring the Jack in the Box.  (*Id.* ¶ 18)  The employee notified Deputy Seiver of a customer's complaint that an individual was tampering with employee's cars in the back of the establishment.  (*Id.*)

Responding to this information, Deputy Seiver spotted Plaintiff on his skateboard and pursued him.  (*Id.* ¶ 19)  Deputy Seiver stopped and searched Plaintiff, (*Id.* ¶ 20), seizing Plaintiff's cell phone, (*Id.* ¶ 21).  Apparently without provocation, Deputy Seiver then "punched Plaintiff in the face twice . . . , choked Plaintiff, grabbed him, and threw him to the ground face first . . . , then slammed and grinded Plaintiff's face onto the parking lot pavement."  (*Id.*)  Prior to and during this encounter, Plaintiff did not "try to run, evade, or flee . . . hit, strike, kick or in any other manner assault and/or commit battery upon" Deputy Seiver.  (*Id.*)  At the time of this incident, "Plaintiff was 5'9" tall and weighed approximately 130 lbs with a thin build. . . . [Deputy Seiver] is approximately 6'–6'1" and weighs approximately 200–210 lbs."  (*Id.* ¶ 20)

As Deputy Seiver was placing handcuffs on Plaintiff, Deputy Ward arrived on the scene.  (*Id.* ¶ 22)  Deputy Ward assisted Deputy Seiver in placing Plaintiff in Deputy Seiver's patrol car.  (*Id.*)  Deputy Seiver then drove to the parking lot to investigate the alleged vehicle tampering, finding no evidence.  (*Id.* ¶ 23)  While Deputy Seiver was investigating, Deputy Mehaffie III arrived and "saw Plaintiff bleeding and handcuffed in the backseat of [the] patrol car," but did not seek medical attention for Plaintiff.  (*Id.* ¶ 24)

//

//

1   Deputy Seiver then transported Plaintiff to the Ramona Sheriff Substation for booking.  (*Id.*

2   ¶ 25)  Thereafter, "the individual Defendants corruptly collaborated on the preparation and filing

3   of false and misleading juvenile crime and use of force reports giving the appearance Deputy

4   Seiver's beating and arrest of Plaintiff was lawful and justified."  (*Id.* ¶ 26)  These reports were

5   authored by Deputies Seiver, Ward, and Mehaffie III, and Detective Crozier.  (*Id.* ¶ 27)  The

6   deputies' supervisor, Seargant Calderon, "reviewed the false police narrative and use of force

7   reports, and signed off on them knowing . . . that the reports were false."  (*Id.*)

8   A three count Juvenile Court Petition was filed on the basis of the false reports, charging

9   Plaintiff with resisting an executive officer, a felony; obstructing/resisting a peace officer, a

10  misdemeanor; and battery on a peace officer, a misdemeanor.  (*Id.* ¶ 28)  Following a hearing on

11  the merits, the entire petition was dismissed.  (*Id.* ¶ 29)

12  **2. Legal Background**

13  Plaintiff filed his complaint in this action on February 14, 2011.  (Compl., ECF No. 1)  The

14  summons was issued on February 15, 2011.  (Summons, ECF No. 2)  On June 28, 2011, the

15  Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and

16  17(b).  (Mot. to Dismiss, ECF No. 9)  On July 20, 2011, Plaintiff filed a motion to appoint

17  guardian ad litem, (Mot. to Appoint Guardian, ECF No. 11), which the Court granted on July 22,

18  2011, (Order, ECF No. 13).  Plaintiff filed his opposition to Defendants' motion to dismiss on July

19  21, 2011, (Resp. in Opp'n, ECF No. 12), and Defendants replied on July 26, 2011, (Reply in

20  Supp., ECF No. 14).

21  **CAPACITY TO BE SUED – RULE 17(b)**

22  **1. Legal Standard**

23  Federal Rule of Civil Procedure Rule 17 applies to a litigant's capacity to sue or be sued.

24  *See* Fed. R. Civ. P. 17.  To determine an individual's capacity, courts must apply the law of the

25  state where the individual is domiciled. Fed. R. Civ. P. 17(b)(1).  If a court determines that an

26  individual is a minor or is otherwise incompetent under state law, Rule 17(c) applies to delineate

27  who may sue on behalf of a minor or incompetent person in federal court.  *See* Fed. R. Civ. P. 7(c).

28  *//*

### 2. Analysis

At the time Plaintiff filed the complaint in this action, he was under 18 years old.[1]  (Compl. ¶ 4, ECF No. 1)  Under California law, an individual under 18 years of age is a minor.  Cal. Fam. Code § 6502.  Defendants argue that because Plaintiff failed to secure a guardian ad litum prior to the issuance of summons, he lacked capacity to sue and therefore the complaint should be dismissed.  (Mot. to Dismiss, ECF No. 2–3)  Defendants base this argument on the fact that, under California law, "[i]f the minor is the plaintiff the appointment [of a guardian ad litem] must be made before the summons is issued."  Cal. Civ. Proc. Code § 373(a).  Defendants' reliance on California law beyond determining capacity to sue or be sued is misplaced, however.

Although pursuant to Rule 17(b) the Court must look to the state of an individual's domicile in determining whether the individual has capacity to sue, once the Court determines that the individual is a minor or is otherwise incompetent, Rule 17(c) comes into play.  4-17 Moore's Federal Practice - Civil § 17.21[3][A].  Thus, in considering the timing of appointing a guardian ad litum, the Court looks to federal law, not state law.  *See, e.g.*, *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002) ("A district court need not look to the state law . . . in determining what factors or procedures to use when appointing the guardian ad litem."); *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001) ("It is well established that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c)."); *S. v. Wermers*, 557 F.2d 170, 174 n.4 (8th Cir. 1977) ("[S]uch state rules [governing appointment of guardian ad litum] are procedural rather than substantive and hence need not be applied in federal courts.").

"Unlike California law, [Rule 17(c)] . . . does not contain a time constraint for filing a petition for guardian ad litem."  *Dean v. City & Cty. of S.F.*, 2006 U.S. Dist. LEXIS, *2 (N.D. Cal., Mar. 28, 2006) (Magistrate Judge); *compare* Cal. Civ. Proc. Code § 373(a) ("If the minor is the plaintiff the appointment must be made before the summons is issued."), *with* Fed. R. Civ. P. 17(c)

---

[1] The complaint indicates that Plaintiff was born in 1993.  (Compl. ¶ 4, ECF No. 1)  It does not indicate Plaintiff's exact birth date, however.  (*See id.*)  Plaintiff will reach the age of majority sometime in 2011.  At the time the Court granted Plaintiff's petition to appoint a guardian ad litum in July 2011, Plaintiff was still a minor.  (Mot. to Appoint, ECF No. 11)  As of the issuance of this Order, however, it is unclear whether Plaintiff has reached the age of majority, which would make Defendants' capacity argument moot.

("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."). Although Plaintiff had not yet secured a guardian ad litum at the time he filed his complaint and the summons was issued, a guardian ad litum has since been appointed. (*See* Order, July 22, 2011, ECF No. 13) Accordingly, Defendants' motion to dismiss pursuant to Rule 17(b) is **DENIED**.

## FAILURE TO STATE A CLAIM – RULE 12(b)(6)

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — US — , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible

entitlement to relief.  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*  Moreover, "for a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**2. Analysis**

Plaintiff asserts five claims for relief against all defendants: (1) Violation of Civil Rights Act (42 U.S.C. § 1983); (2) Violations of California Unruh/Banes Civil Rights Act; (3) Assault and Battery; (4) Intentional Infliction of Emotional Distress; and (5) Negligence.  (Compl., ECF No. 1)  Defendants move to dismiss the entire complaint pursuant to Rule 12(b)(6).[2]

//

---

[2] Although Defendants' motion to dismiss purports to dismiss the entire complaint, (*See* Mot. to Dismiss 9, ECF No. 9 ("[E]ach defendant is entitled to dismissal of plaintiff's entire complaint for failure to state facts sufficient to state a claim.")), the motion does not provide a basis for dismissal of every claim, nor does it provide a basis for dismissal of every defendant.  In fact, Defendants appear to concede that Plaintiff has alleged sufficient facts against Deputy Seiver as to several of the claims.  (*See id.* at 5 ("[W]ith respect to all but Deputy Seivert (sic), the complaint is wholly devoid of any factual allegations of unconstitutional conduct by the other deputies.")); (Reply in Supp. 2, ECF No. 14 ("The complaint is completely devoid of any facts supporting assault and battery except as to Deputy Seiver.")).
    The Court will consider only the arguments presented in Defendants' motion to dismiss. Accordingly, the motion to dismiss the 42 U.S.C. § 1983 claim against Deputy Seiver is **DENIED**; the motion to dismiss the violations of the California Unruh/Banes Civil Rights Act against all defendants is **DENIED**; the motion to dismiss the claim for assault and battery against Deputy Seiver is **DENIED**; and the motion to dismiss the claims for intentional infliction of emotional distress and negligence against all defendants except the County of San Diego is **DENIED**.

*A.  Violations of Civil Rights Act (42 U.S.C. § 1983)*

The Civil Rights Act, 42 U.S.C. § 1983, provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983 is not a source of substantive rights, but merely a method for vindicating federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  To succeed on a claim under § 1983, a plaintiff must show (1) the deprivation of "a right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

*(1)  Individual Liability Against Defendants Deputy Ward, Deputy Mehaffie III, and Detective Crozier*

Plaintiff's assertion of § 1983 liability against the individually named defendants other than Deputy Seiver is premised on their failure to obtain medical care or treatment for Plaintiff, (Compl. ¶¶ 22–25, 35, ECF No. 1), and their "corruptly collaborat[ing] on the preparation and filing of false and misleading juvenile crime and use of force reports," (*id.* ¶ 26).[3]  In order to state a claim under § 1983, Plaintiff must first establish that he suffered the deprivation of a Constitutional right by the officers' failure to provide necessary medical treatment or their preparation of false police reports.  If Plaintiff can demonstrate the deprivation of a constitutional right on one of these bases, then he must show that the alleged deprivation was committed under color of state law.

(a) Deprivation of a Constitutional Right – Failure to Provide Necessary Medical Treatment

"[F]ailure or refusal to provide medical care, or treatment so cursory as to amount to no treatment at all, may, in the case of serious medical problems, violate the Fourteenth Amendment." *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970); *see also City of Canton v. Harris*, 489 U.S. 378 (1989) (considering municipal liability for the unconstitutional deprivation of medical care while in police custody).  The complaint alleges that, following Deputy Seiver's beating of

---

[3] Although Plaintiff also alleges unlawful use of excessive force and unreasonable seizure, (Compl. ¶ 34–35, ECF No. 1), these allegations are directed solely at Deputy Seiver.

1  Plaintiff prior to his arrest, Plaintiff was visibly bleeding from his injuries and was in physical

2  pain.  (Compl. ¶¶ 22–25, 35, ECF No. 1)  Deputy Ward assisted Deputy Seiver in placing

3  Plaintiff—who was then bleeding and in pain—in the back of Deputy Seiver's patrol car, but at no

4  time sought medical treatment for Plaintiff's injuries.  (*Id.* ¶ 22)  Deputy Mehaffie III also

5  witnessed Plaintiff suffering from his injuries in the back of Deputy Seiver's patrol car, but did not

6  seek medical treatment.  (*Id.* ¶ 24)  Upon transporting Plaintiff to the Ramona Sheriff Substation,

7  none of the officers present, including Detective Crozier, obtained "medical attention for

8  [Plaintiff's] head, arm, neck, and back injuries."  (*Id.* ¶ 25)  Given these allegations, the Court

9  finds that Plaintiff has adequately stated a claim against Deputy Ward, Deputy Mehaffie III, and

10  Detective Crozier for deprivation of a constitutional right for their failure to provide Plaintiff with

11  necessary medical care while he was in police custody.

12  (b)  Deprivation of a Constitutional Right – Filing of False Police Report

13          Although the filing of a false police report itself does not amount to a constitutional

14  violation, it can provide the basis for a § 1983 action where it results in some constitutional harm

15  to the plaintiff.  *See, e.g.*, *Landrigan v. City of Warwick*, 628 F.2d 736, 744–45 (1st Cir. 1980)

16  ("[T]he mere filing of the false police reports, by themselves and without more, did not create a

17  right of action in damages under 42 U.S.C. § 1983."); *Bronner v. S.F. Superior Court*, 2010 U.S.

18  Dist. LEXIS 80503, at *15 (N.D. Cal. July 1, 2010) ("Numerous courts have held that the fact that

19  a false, incomplete or fraudulent police report has been filed is insufficient to state a § 1983

20  claim. . . . As these cases make clear, there must be some constitutional deprivation that flows

21  from the report.").

22          Here, Plaintiff has alleged that "[b]ased on the presumptive facial validity of [the] false

23  Sheriff reports concerning this December 29, 2009 incident, a three count criminal Juvenile Court

24  Petition alleging violations of California [law] was filed by the San Diego County District

25  Attorney against Plaintiff."  (Compl. ¶ 28, ECF No. 1)  That petition was subsequently dismissed

26  in its entirety, however.  (*Id.* ¶ 29)  As such, the Court finds that the filing of the false police

27  report, even where it resulted in charges being filed, did not constitute a civil rights violation.  *See,*

28  *e.g. Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974) ("[T]he tort of malicious prosecution,

without more, does not constitute a civil rights violation."); *Curry v. Ragan*, 257 F.2d 449, 450 (5th Cir. 1958) ("Neither the Fourteenth Amendment nor the Civil Rights Acts purport to secure a person against unfounded or even malicious claims or suits in state courts.").  Accordingly, the filing of the false police report cannot be the basis of a § 1983 claim against Deputy Ward, Deputy Mehaffie III, or Detective Crozier.

(c) Under Color of State Law

Having alleged sufficient facts to establish a violation of a constitutional right by the officers' failure to provide necessary medical treatment, Plaintiff must next demonstrate that the alleged deprivation was committed under color of state law.  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

Here, the alleged constitutional violations came at the hands of Deputy Ward, Deputy Mehaffie III, and Detective Crozier, all acting in their official capacity.  As such, their actions were taken "under color of law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (internal quotation marks omitted)), overruled on other grounds by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Thus, the Court finds that Plaintiff has alleged sufficient facts to state a claim for individual liability against Deputy Ward, Deputy Mehaffie III, and Detective Crozier under § 1983 for their failure to provide necessary medical treatment.  Accordingly, the motion to dismiss the § 1983 claim as to these defendants is **DENIED**.

*(2)  Supervisory Liability Against Defendant Seargant Calderon*

Plaintiff's assertion of § 1983 liability against Defendant Seargant Calderon is based on his role as "a sheriff with supervisory authority and responsibility over the sheriff deputies working under him."  (Compl. ¶ 11, ECF No. 1)  Seargant Calderon allegedly "reviewed the false police narrative and use of force reports, and signed off on them knowing, or should have been knowing (sic), that the reports were false."  (*Id.* ¶ 27)

1    Section 1983 does not allow for the concept of respondeat superior liability, but requires

2    "personal participation" in the alleged violation of constitutional rights.  *Bell v. Clackamas Cnty.*

3    341 F.3d 858, 867 n.3 (9th Cir. 2003) ("[I]ndividual liability cannot be premised on respondeat

4    superior.") (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)).  Therefore, "a supervisor

5    is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations

6    or knew of the violations [of subordinates] and failed to act to prevent them.'"  *Preschooler II v.*

7    *Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting *Taylor v. List*, 880 F.2d

8    1040, 1045 (9th Cir. 1989)).  Explained another way,

9
         Supervisory liability is imposed against a supervisory official in his individual
10       capacity for his own culpable action or inaction in the training, supervision, or
         control of his subordinates, for his acquiescence in the constitutional deprivations
         of which the complaint is made, or for the conduct that showed a reckless or
11       callous indifference to the rights of others.

12   *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).  Where a subordinate commits a

13   constitutional violation, the supervisor's liability "depends on whether he 'set in motion a series of

14   acts by others, or knowingly refused to terminate a series of acts by others, which he knew or

15   reasonably should have known, would cause others to inflict the constitutional injury.'"

16   *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (quoting *Watkins v. City of*

17   *Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  At the motion-to-dismiss phase, the plaintiff

18   needs only to "state the allegations generally so as to provide notice to the defendants and alert the

19   court as to what conduct" amounted to personal participation in the constitutional violation.

20   *Preschooler II*, 479 F.3d at 1182 (citing *Hydrick v. Hunter*, 466 F.3d 676, 689–90 (9th Cir. 2006)).

21       Here, Plaintiff's only allegations against Seargant Calderon are that he supervised the

22   deputies and reviewed and signed the allegedly false police report.  (Compl. ¶ 27, ECF No. 1)  The

23   Court finds such bare allegations of personal participation insufficient to state a claim for

24   supervisory liability against Seargant Calderon.  Though conclusively stating that Seargant

25   Calderon knew or should have known of the falsity of the police report regarding Plaintiff's

26   encounter with Deputy Seiver, (*Id.*), the complaint alleges no facts concerning Seargant

27   Calderon's knowledge of his subordinates' tendency to file false police reports, or his

28   implementation of a policy condoning the preparation of false reports.  In short, the complaint fails

to plead more than a respondeat superior theory of liability against Seargant Calderon; to survive a motion to dismiss, however, Plaintiff must allege that Seargant Calderon personally participated in the alleged constitutional violations.  Thus, Defendants' motion to dismiss the § 1983 claim against Seargant Calderon is **GRANTED**.

*(2)  Municipal Liability Against Defendant County of San Diego*

Plaintiff's assertion of § 1983 liability against the County of San Diego is premised on the County's unconstitutional custom or policy, pursuant to *Monell*, 437 U.S. at 694.  Specifically, Plaintiff alleges that the County has an official "policy, practice, and custom" of negligently hiring police officers and deputy sheriffs; condoning the use of excessive force on citizens; condoning the conducting of unlawful searches and seizures; condoning the preparation of false police reports; refusing to supervise, reprimand, or discipline law enforcement officers and deputies; and inadequately training and supervising government employees with respect to the apprehension of suspects, the existence of probable cause, the reasonable and proper use of force, and the investigation of police misconduct.  (Compl. ¶¶ 38–39, ECF No. 1)  Defendants move to dismiss the § 1983 claim against the County of San Diego because of "the absence of factual allegations of enforcement of a relevant policy or custom which deprived plaintiff of an established constitutional right."  (Mot. to Dismiss 6, ECF No. 9)

"A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  However, a municipality may be held liable under § 1983 for constitutional violations that result from enforcement of the municipality's official policies and customs.  *See id.* at 694.  A policy or custom may be demonstrated in several ways:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002)).  A government policy of inadequate training or supervision may also give rise to § 1983 municipal liability, but "only where the failure to train amounts to

1   deliberate indifference to the rights of persons with whom the police come into contact." *City of*

2   *Canton*, 489 U.S. at 388.

3        In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must

4   consist of more than mere "formulaic recitations of the existence of unlawful policies, customs, or

5   habits." *Warner v. Cnty, of San Diego*, 2011 U.S. Dist. LEXIS 14312, at *10 (S.D. Cal., Feb. 14,

6   2011). Prior to the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth Circuit had held

7   that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to

8   dismiss 'even if the claim is based on nothing more than a bare allegation that the individual

9   officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police*

10  *Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. Cnty. of L.A.*, 797 F.2d 743, 747 (9th

11  Cir. 1986)). In light of *Twombly* and *Iqbal*, however, something more is required; mere

12  conclusory allegations are insufficient. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557; *see*

13  *also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10.

14       Here, the Court finds that Plaintiff's complaint does not meet the pleading requirements of

15  *Twombly* and *Iqbal*. Plaintiff merely recites the existence of unlawful policies, practices, and

16  customs, without supporting these conclusory allegations with specific facts. Plaintiff has

17  provided no facts from which to infer that the County "condones" the use of excessive force,

18  unlawful searches and seizures, or the filing of false police reports, outside this one alleged

19  instance.

20       Moreover, to the extent that Plaintiff's basis for *Monell* liability is premised on inadequate

21  training or supervision, "[p]roof of a single incident of unconstitutional activity is not sufficient to

22  impose liability under *Monell*." *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Rather,

23  Plaintiff is required to show that the failure to train or supervise "amounts to a deliberate

24  indifference," such as when

25           in light of the duties assigned to specific officers or employees the need for more
             or different training is so obvious, and the inadequacy so likely to result in the
26           violation of constitutional rights, that the policymakers of the city can reasonably
             be said to have been deliberately indifferent to the need.
27

28  *City of Canton*, 489 U.S. at 390. Here, Plaintiff merely alleges that Deputy Seiver and the other

    individually named defendants were inadequately trained, but he fails to allege sufficient facts to

1  support a finding that the failure to train amounted to a "deliberate indifference" such that the

2  County of San Diego can be subject to liability under § 1983.

3        Additionally, Plaintiff has failed to allege sufficient facts to support a finding that the

4  County's hiring of Deputy Seiver amounted to such "deliberate indifference" that the County may

5  be held liable.  Not only is a single instance of inadequate screening insufficient to prove that the

6  municipality caused the injuries alleged, but there must also be a "finding that [the] officer was

7  highly likely to inflict the particular injury suffered by the plaintiff.  The connection between the

8  background of the particular applicant and the specific constitutional violation must be strong."

9  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 412 (1997).  Plaintiff has failed to allege more than

10  a single instance of allegedly inadequate screening, and has provided no allegations as to Deputy

11  Seiver's background at the time he was hired.  As such, Plaintiff has failed to allege sufficient facts

12  to support a claim for inadequate screening such that municipal liability could be imposed.

13        Thus, the Court finds that Plaintiff's complaint fails to state claim for municipal liability

14  against the County of San Diego under 42 U.S.C. § 1983.  Accordingly, Defendants' motion to

15  dismiss Plaintiff's § 1983 claim against the County of San Diego is **GRANTED**.

16  ***B.  Assault and Battery***

17        Plaintiff asserts a claim for assault and battery against all Defendants.  (Compl. ¶¶ 53–61,

18  ECF No. 1)  Defendants move to dismiss the claim for assault and battery against all defendants

19  except Deputy Seiver: "All of plaintiff's factual allegations pertaining to assault and battery refer

20  exclusively to Deputy Seiver.  Accordingly the attribution of liability for this claim . . . to all of the

21  defendants and the County is unsupported, improper and should be dismissed."  (Mot. to Dismiss

22  8, ECF No. 9)  Plaintiff opposes Defendants' motion only as to Deputy Ward and the Doe

23  defendants.  (Resp. in Opp'n 10–11, ECF No. 12)[4]

24  _____

25        [4] Plaintiff states in his opposition brief the following:

26        Exactly how Deputy Ward assisted in getting Plaintiff into the patrol car remains
         unknown due to lack of detail in the Juvenile arrest and investigation reports.
27        Plaintiff is convinced that he was battered by another officer besides Deputy Seiver;
         however, he was in no physical or cognitive condition to determine the identity of
28        the other officer.

1    Under California law, "assault" is the "unlawful attempt, coupled with a present ability, to

2  commit a violent injury on the person of another."  Cal. Penal Code § 240.  "Battery" is "any

3  willful and unlawful use of force or violence upon the person of another."  *Id.* § 242.  Under either

4  theory of liability, the defendant must either threaten to touch or actually touch the plaintiff in a

5  harmful or offensive way.  *See Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2006) (listing

6  the elements of assault and battery under California law).

7    Plaintiff has failed to allege sufficient facts to state a claim for assault or battery against

8  any of the defendants other than Deputy Seiver.  All of the injuries Plaintiff alleges to have

9  suffered came at the hand of Deputy Seiver; there are no allegations that any other officers harmed

10  or threatened to harm Plaintiff in any way.  Thus, the Court **GRANTS** Defendants' motion to

11  dismiss the claim for assault and battery against all Defendants except Defendant Seiver.  The

12  claim for assault and battery is **DISMISSED WITH PREJUDICE** as to Defendants Detective

13  Crozier, Deputy Mehaffie III, Seargant Calderon, and the County of San Diego.  The claim for

14  assault and battery is **DISMISSED WITHOUT PREJUDICE** as to Defendant Deputy Ward and

15  the Doe defendants.

16  *C.  Intentional Infliction of Emotional Distress & Negligence*

17    Plaintiff asserts claims for intentional infliction of emotional distress and negligence

18  against all Defendants.  (Compl. ¶¶ 62–66, 67–72, ECF No. 1)  Defendants' motion to dismiss

19  seeks dismissal of Plaintiff's intentional infliction of emotional distress and negligence claims

20  against Defendant County of San Diego pursuant to the County's immunity from tort liability

21  absent some statutory basis.  (Mot. to Dismiss 8, ECF No. 9)

22    "In California, a governmental entity can only be sued in tort pursuant to an authorizing

23  statute or enactment."  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 840 (9th Cir. 1996) (citing

24  *Lopez v. S. Cal. Rapid Transit Dist.*, 710 P.2d 907, 909 n.2 (Cal. 1985)); *see also* Cal. Gov. Code

25  
26  (Resp. in Opp'n 11, ECF No. 12)  Even assuming this allegation is sufficient to state a claim against Deputy Ward for assault and battery, this factual allegation was raised for the first time in Plaintiff's opposition brief and cannot cure the deficiencies of the complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Nevertheless, the Court can and will consider allegations raised for the first time in Plaintiff's opposition brief in considering whether to grant leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001)).

- 14 -                                11cv305

§ 815(a) ("Except as otherwise provided by statute: . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.").  Although a public entity is immune from direct liability, it may nevertheless be held vicariously liable "for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."  Cal. Gov. Code § 815.2(a).

*(1)  Direct Liability*

In order to state a claim for direct tort liability against a public entity, a plaintiff must plead "a statutory basis showing that the County may be held liable for their claims."  *Comm. for Immigrant Rights v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1208 (N.D. Cal. 2009).  Here, Plaintiff has failed to plead a statutory basis by which the County of San Diego may be held directly liable for the torts of intentional infliction of emotional distress or negligence. Accordingly, to the extent Plaintiff claims direct tort liability against the County of San Diego, these claims are **DISMISSED**.  Moreover, because "[i]ntentional infliction of emotional distress is a common law tort from which public entities enjoy immunity," *Aguilar v. Corral*, 2007 U.S. Dist. LEXIS 77359, at *13 n.4 (E.D. Cal. Oct. 9, 2007), the direct liability claim for intentional infliction of emotional distress against the County is **DISMISSED WITH PREJUDICE**.

*(2)  Vicarious Liability*

Although Plaintiff has failed to state a claim for direct tort liability against the County of San Diego, this does not preclude him from stating a claim for vicarious liability for the acts of the County's employees.  Here, assuming—as Defendants apparently concede—that Plaintiff has alleged sufficient facts to state a claim for intentional infliction of emotional distress and negligence against Deputy Seiver and the other individually named defendants, Plaintiff can state a claim against the County of San Diego for vicarious liability pursuant to section 815.2(a).  Thus, the motion to dismiss Plaintiff's claims for vicarious liability for intentional infliction of emotional distress and negligence against the County of San Diego are **DENIED**.

//

**3. Conclusion**

For the reasons stated above, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**:

1) Defendants' motion to dismiss the entire complaint pursuant to Rule 17(b) is **DENIED**.

2) Defendants' motion to dismiss the 42 U.S.C. § 1983 claim is **GRANTED IN PART AND DENIED IN PART**: The motion to dismiss the § 1983 claim against Deputy Seiver, Deputy Ward, Deputy Mehaffie III, and Detective Crozier is **DENIED**.  The motion to dismiss the § 1983 claims against Seargant Calderon and the County of San Diego is **GRANTED**; the § 1983 claims against the Seargant Calderon and the County of San Diego are **DISMISSED WITHOUT PREJUDICE**.

3) Defendants' motion to dismiss the violations of the California Unruh/Banes Civil Rights Act against all defendants is **DENIED**.

4) Defendants' motion to dismiss the claims of assault and battery is **GRANTED IN PART AND DENIED IN PART**: The motion to dismiss the assault and battery claim against Deputy Seiver is **DENIED**.  The motion to dismiss the assault and battery claim against all other defendants is **GRANTED**; the claim for assault and battery is **DISMISSED WITH PREJUDICE** as to Defendants Detective Crozier, Deputy Mehaffie III, Seargant Calderon, and the County of San Diego; the claim for assault and battery is **DISMISSED WITHOUT PREJUDICE** as to Deputy Ward and the Doe defendants.

5) Defendants' motion to dismiss the claim for intentional infliction of emotional distress is **GRANTED IN PART AND DENIED IN PART**: The motion to dismiss the direct claim for intentional infliction of emotional distress against the County of San Diego is **GRANTED**; the direct claim for intentional infliction of emotional distress against the County of San Diego is **DISMISSED WITH PREJUDICE**.  The motion to dismiss the vicarious liability claim for intentional infliction of emotional distress against the County of San Diego is **DENIED**.  The motion to dismiss the intentional infliction of emotional distress claims against all other defendants is **DENIED**.

//

1    6) Defendants' motion to dismiss the claim for negligence is **GRANTED IN PART AND**

2 **DENIED IN PART**: The motion to dismiss the direct claim for negligence against the County of

3 San Diego is **GRANTED**; the direct claim for negligence against the County of San Diego is

4 **DISMISSED WITHOUT PREJUDICE**.  The motion to dismiss the vicarious liability claim for

5 negligence against the County of San Diego is **DENIED**.  The motion to dismiss the negligence

6 claims against all other defendants is **DENIED**.

7    If Plaintiff wishes, he may file an amended complaint within 14 days of the filing of this

8 order.

9    **IT IS SO ORDERED**.

10 DATED:  November 2, 2011

11                                   _Janis L. Sammartino_
                                    Honorable Janis L. Sammartino
12                                   United States District Judge

11cv305